<u>ORAL ARGUMENT REQUESTED</u>

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SELMA STONE, ET AL | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. DR-11-CV-16-AM |
| | ) | |
| LIFE PARTNERS HOLDINGS, INC., BRIAN | ) | CLASS ACTION |
| D. PARDO, R. SCOTT PEDEN, and | ) | |
| DAVID M. MARTIN | ) | |
| . | ) | |

<u>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF
IN SUPPORT THEREOF**</u>

**LOCKE LORD LLP**
Jason S. Lewis
State Bar No. 24007551
Email: jlewis@lockelord.com
David W. Klaudt
State Bar No. 00796073
Email: dklaudt@lockelord.com
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Tel: (214) 740-8000
Fax: (214) 756-8432

**ATTORNEY FOR DEFENDANT BRIAN D.
PARDO**

**BAKER & MCKENZIE, LLP**
Elizabeth L. Yingling (Lead Counsel)
State Bar No. 16935975
E-Mail: elizabeth.yingling@bakermckenzie.com
Laura J. O'Rourke
State Bar No. 24037219
E-Mail: laura.orourke@bakermckenzie.com
Will R. Daugherty
State Bar No. 24053170
E-Mail: will.daugherty@bakermckenzie.com
2300 Trammell Crow Center, 2001 Ross Avenue
Dallas, TX 75201
Tel.: (214) 978-3000
Fax: (214) 978-3099

Trey Martinez Fischer
State Bar No. 24007183
IBC Centre
130 East Travis, Suite 425
San Antonio, Texas 78205
Tel.: (210) 224-6000
Fax: (210) 229 8222
www.tmflawfirm.com

**ATTORNEYS FOR DEFENDANTS LIFE
PARTNERS HOLDINGS, INC, R. SCOTT
PEDEN, AND DAVID M. MARTIN**

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ..........................................................................1

II.  ARGUMENT AND AUTHORITIES.................................................................3

    A.   Standards for Motion to Dismiss ...............................................................3

        1.   Pleading requirements under the PSLRA and Rules 12(b)(6) and 9(b) for Alleged Misrepresentations and Omissions.................................................3

        2.   Pleading Requirements for Scienter under the PSLRA and Rules 9(b) and 12(b)(6) ...........................................................................................5

    B.   Plaintiffs Failed to Adequately Plead "Motive" ......................................7

        1.   Allegations of "Insider Trading" do not Adequately Plead Scienter...........7

        2.   Allegations of Dividend Payments do not Adequately Plead Scienter......10

    C.   Plaintiffs Failed to Adequately Plead a Section 10(b) Claim Derived from the "Unsustainable Business Model" Allegations ......................................13

        1.   Plaintiffs Failed to Adequately Identify any Alleged Misrepresentations .....................................................................................13

        2.   Plaintiffs' Allegations that Defendants Used Fraudulent Life Expectancy Estimates to Sell Policies Fail to Satisfy the Rule 9(b) and PSLRA Heightened Pleading Requirements...........................................................15

            a.   Neither Dr. Cassidy's Methodology nor Peden's Alleged Incorrect Descriptions thereof Impose Liability on Defendants .........................15

            b.   Defendants did not Know that Dr. Cassidy's LEs were Materially Short.....................................................................................................17

    D.   Plaintiffs Failed to Adequately Plead a Section 10(b) Claim Based on the Failure to Disclose a Known Trend or Risk.............................................21

        1.   LPHI's Risk Disclosures were Adequate.................................................21

        2.   Defendants were not Required to make Disclosures Regarding Dr. Cassidy's Life Expectancies Pursuant to Item 303 of Regulation S-K .....22

    E.   Plaintiffs Failed to Adequately Plead a Section 10(b) Claim Based on Statements Made in Analyst Calls and Press Releases ...........................................24

F.    Plaintiffs Failed to Adequately Plead a Section 10(b) Claim for Accounting Fraud ...................................................................................................27

        1.    Plaintiff Failed to Plead Scienter with Respect to the Revenue Recognition Claims.......................................................................27

        2.    Plaintiffs Failed to Plead Scienter with respect to the Impairment Claims ...........................................................................31

        3.    Plaintiffs' Claims Based upon alleged SOX Certifications are Inadequate .......................................................................32

G.    The Complaint Fails to State a Claim for Controlling Persons Liability under Section 20(a) ......................................................................34

III.    CONCLUSION......................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*ABC Arbitrage Plaintiff's Group v. Tchuruk,*
 291 F.3d 336 (5th Cir. 2002) ..................................................................4, 5, 24

*Abrams v. Baker Hughes, Inc.,*
 292 F.3d 424 (5th Cir. 2002) ........................................................... passim

*Ashcroft v. Iqbal,*
 556 U.S. 662, 129 S. Ct. 1937 (2009)..............................................................4, 18

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007)............................................................................................4

*Belodoff v. Netlist, Inc.,*
 No. SACV 07-00677 DOC (MLGx), 2009 U.S. Dist. LEXIS 78309
 (C.D. Cal. Sept. 1, 2009)..................................................................................22

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.,*
 497 F. 3d 546 (5th Cir. 2007) .................................................................4, 7, 28

*Dorsey v. Portfolio Equities Inc.,*
 540 F.3d 333 (5th Cir. 2008) .............................................................................2, 19

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.,*
 594 F.3d 783 (11th Cir. 2010) ...........................................................................8

*Fin. Acquisition Partners LP v. Blackwell,*
 440 F.3d 278 (5th Cir. 2006) ..........................................................................4, 7

*Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.,*
 565 F.3d 200 (5th Cir. 2009) .............................................................................5

*Goldstein v. MCI Worldcom,*
 340 F.3d 238 (5th Cir. 2003) ..........................................................................30

*Hopson v. MetroPCS Commc'ns, Inc.,*
 No. 3:09-CV-2302-G, 2011 U.S. Dist. LEXIS 47177 (N.D. Tex. Mar. 25, 2011)......14, 24, 25

*In re 2007 Novastar Fin'l Inc., Sec's Litig.,*
 579 F.3d 878 (8th Cir. 2009) ...........................................................................24

*In re Bear Stearns Cos., Inc. Sec. Litig.,*
 763 F. Supp. 2d 423 (S.D.N.Y. 2011)................................................................8

*In re BP P.L.C., Sec. Litig.*,
  No. 4:10-md-2185, 2012 U.S. Dist. LEXIS 17787 (S.D. Tex. Feb. 13, 2012).........................3

*In re Capstead Mortg. Corp. Sec. Litig.*,
  258 F. Supp. 2d 533 (N.D. Tex. 2003) ................................................................15

*In re Ceridian Corp. Sec. Litig.*,
  542 F. 3d 240 (8th Cir. 2008) ....................................................................28, 33

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D.Cal. 2005) ..............................................................26

*In re Dell Inc. Sec. Litig.*,
  591 F. Supp. 2d 877 (W.D. Tex. 2008)........................................................7, 28, 34

*In re Enron Corp. Sec. Litig.*,
  258 F.Supp. 2d 576 (S.D. Tex. 2003) ................................................................23

*In re Franklin Bank Corp. Sec's Litig.*,
  2011 U.S. Dist. LEXIS 28898 (S.D. Tex. Mar. 21, 2011)......................................34

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)................................................................23

*In re Sun Microsystems, Inc. Sec. Litig.*,
  No. C 89 20351 RPA, 1990 U.S. Dist. LEXIS 18740 (N.D. Cal. Aug. 20, 1990) .................20

*In re Toyota Motor Corp. Sec's Litig.*,
  No. CV 10-922 DSF, 2011 U.S. Dist. LEXIS 75732 (C.D. Cal. July 7, 2011)......................14

*In re Verifone Holdings, Inc. Sec's Litig.*,
  No. C-07-6140-MHP, 2011 U.S. Dist. LEXIS 24964 (N.D. Cal. Mar. 8, 2011) ...................34

*In re XM Satellite Radio Holdings Secs. Litig.*,
  479 F. Supp. 2d 165 (D.D.C. 2007) ................................................................26

*In re Yukos Oil Co. Sec's Litig.*,
  No. 04-CIV-5243 (WHP), 2006 U.S. Dist. LEXIS 78067 (S.D.N.Y. Oct. 25,
  2006) ...................................................................................10, 11, 12

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*,
  537 F.3d 527 (5th Cir. 2008) ................................................................ passim

*La. Sch. Emp. Ret. Sys. v. Ernst & Young*,
  622 F.3d 471 (6th Cir. 2010) ........................................................................13

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)............................................................................5

*Lovelace v. Software Spectrum, Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ..........................................................................................2, 34

*Magruder v. Halliburton Co.*,
   No. 05-CV-1156, 2009 U.S. Dist. LEXIS 27561 (N.D. Tex. Mar. 31, 2009) ..............6, 15, 28

*Nathenson v. Zonagen, Inc.*,
   267 F.3d 400 (5th Cir. 2001) ...................................................................................................7

*Oran v. Stafford*,
   226 F.3d 275 (3rd Cir. 2000) .................................................................................................23

*Patel v. Patel*,
   761 F. Supp. 2d 1375 (N.D. Ga. 2011) ................................................................................10

*Pedroli v. Bartek*,
   564 F. Supp. 2d 683 (E.D. Tex. 2008) ...................................................................................7

*Rosenzweig v. Azurix Corp.*,
   332 F.3d 854 (5th Cir. 2003) ...................................................................................................5

*SEC v. Cohen*,
   No. 4:05-CV-371-DJS, 2007 U.S. Dist. LEXIS 28934 (E.D. Mo. Apr. 19, 2007) ..........29, 30

*SEC v. Kelly*,
   No. 08-Civ-04612 (CM), 2011 U.S. Dist. LEXIS 108805 (S.D.N.Y. Sept. 22, 2011) ............5

*SEC v. Life Partners, Inc.*,
   87 F.3d 536 (D.C. Cir. 1996) ............................................................................................2, 16

*SEC v. Morgan Keegan & Co.*,
   No. 1:09-cv-1965-WSD, 2011 U.S. Dist. LEXIS 71481 (N.D. Ga. June 28, 2011) ..............17

*SEC v. Shanahan*,
   646 F.3d 536 (8th Cir. 2011) .................................................................................................31

*SEC v. Todd*,
   No. 03CV2230 BEN (WMc), 2006 U.S. Dist. LEXIS 41182, at *20 (S.D. Cal. May
   30, 2006) ................................................................................................................................27

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3rd Cir. 1992) .................................................................................................34

*Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*,
   365 F.3d 353 (5th Cir. 2004) ......................................................................................... passim

*Tamar v. Mind C.T.I., Ltd.*,
   723 F. Supp. 2d 546 (S.D.N.Y. 2010).....................................................................................12

*Teachers' Ret. Sys. v. Hunter*,
    477 F.3d 162, 185 (4th Cir. 2007) ...................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................1, 6, 12

*United States v. Lloyds TSB Bank PLC*,
    639 F. Supp. 2d 326 (S.D.N.Y. 2009) ...........................................................18

*Wozniak v. Align Tech., Inc.*,
    No. C-09-3671 MMC, 2011 U.S. Dist. LEXIS 60894 (N.D. Cal. Mar. 21, 2011)................26

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011) ........................................................................5

STATUTES

15 U.S.C. §77z-2(c)(1).............................................................................24, 25

15 U.S.C. §78j(b) ...........................................................................................16

15 U.S.C. §78t................................................................................................34

15 U.S.C. §78u-4 ..............................................................................................1

15 U.S.C. §78u-4 (b)(1),(2) .............................................................................4

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..................................................................................1, 3, 5

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 3, 5

Paul Siegert, *Evolution of Life Expectancies in the Life Insurance Secondary Market
    ...Current Trends and New Developments*, Life Insurance Settlement Series Edition
    No. VI (Aug. 4, 2010) ................................................................................15, 16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| SELMA STONE, ET AL | ) | |
| | ) | |
| | ) | |
| | ) | |
| Vs. | ) | CIVIL ACTION NO. DR-11-CV-16-AM |
| | ) | |
| LIFE PARTNERS HOLDINGS, INC., BRIAN | ) | CLASS ACTION |
| D. PARDO, R. SCOTT PEDEN, and | ) | |
| DAVID M. MARTIN, | ) | |
| . | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF

COME NOW DEFENDANTS, LIFE PARTNERS HOLDINGS, INC. ("LPHI"), BRIAN

D. PARDO, R. SCOTT PEDEN, and DAVID M. MARTIN (collectively, Defendants), and file

this their Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint") pursuant to

Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as pursuant to the

Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4, and respectfully show

the Court as follows:

## I.
## PRELIMINARY STATEMENT

"Private securities fraud actions, . . . if not adequately contained, can be employed

abusively to impose substantial costs on companies and individuals whose conduct conforms to

the law.  As a check against abusive litigation by private parties, Congress enacted the

[PSLRA]."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007) (internal

citations omitted).  Accordingly, "[t]he PSLRA set high standards for pursuing federal securities

fraud suits in order to check 'frivolous, lawyer-driven litigation, while preserving investors'

ability to recover on meritorious claims.'"  *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group Inc.*, 537 F.3d 527, 533 (5th Cir. 2008) (quoting *Tellabs,* 551 U.S. at 313).  It is against this background that Plaintiffs' Complaint must be judged.

As admitted by Plaintiffs, LPHI is the publicly-traded parent company of Life Partners, Inc. ("LPI").[1]  LPI, a non-party to this action, is a private, Waco-based company that has been in business since 1991.[2]  LPI facilitates the sale of life settlements between sellers and purchasers. Importantly, the life settlements are <u>not</u> securities under the federal securities laws, and individuals who purchase life settlements are not LPHI shareholders.[3]  Despite this, however, the bulk of Plaintiffs' allegations in this case concern how LPI conducts its business, *i.e.,* how LPI obtains and utilizes life expectancy estimates in its facilitation of the sales of life settlements. Ignoring the obvious lack of standing and jurisdiction for LPHI shareholders to complain of LPI's business practices, Plaintiffs, nevertheless, improperly attempt to bootstrap such a case into one of federal securities fraud by repeatedly asserting that "LPHI's"[4] business was "unsustainable."  Of course, LPI has been in business for more than twenty (20) years, an undisputed and public fact that, on its face, refutes Plaintiffs' primary basis for this suit.

Plaintiffs' 151-page Complaint purports to allege but two causes of action: securities fraud under Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder; and controlling person liability under Section 20(a) of the Exchange Act – liability that may only be imposed if there is a finding of fraud under Section

---

[1] Compl., ¶2.
[2] LPHI Form 10-K for fiscal year ended February 28, 2011, at p. 4, found at http://www.sec.gov/Archives/edgar/Data /49534/00011442041/v241450_10k.htm.  On a motion to dismiss, the Court may rely on "'matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)(quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  This includes documents required to be filed with the SEC. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).
[3] *See SEC v. Life Partners, Inc.,* 87 F.3d 536, 549 (D.C. Cir. 1996) (The court "conclude[s] that the viatical settlements marketed by LPI are not securities.").
[4] Plaintiffs repeatedly, and improperly, discuss LPI's business practices and history, while misleadingly referring to LPHI throughout the Complaint.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 2**

10(b).  In essence, the Complaint asserts three types of "false and misleading statements."  First, the Complaint alleges that LPHI's reported financial results were false and misleading because they did not disclose that LPHI's business model was "unsustainable" due to alleged understated life expectancy estimates.  However, the Complaint fails to allege how this purported "unsustainable business model" caused LPHI's financial statements to be false and misleading, or, even if same were appropriately alleged, how each Defendant acted with scienter in the publication of such financial statements.  Second, the Complaint alleges that the SOX certifications signed by the individual Defendants were false because LPHI's internal controls were defective.  Absent from the Complaint, however, are allegations that any Defendant knew of such issues at the time of the signing of the certifications.  Finally, the Complaint alleges that LPHI's financial statements were false because they were not in compliance with GAAP or SEC regulations.  Again, the Complaint fails to allege that any of the Defendants acted with scienter in the publication of any inaccurate accounting figures.  Such allegations simply do not withstand the heightened scrutiny the PSLRA requires.

In short, the Complaint falls woefully short of satisfying the pleading requirements of the PSLRA, and Rules 9(b) and 12(b)(6).  Accordingly, as detailed herein, the Complaint must be dismissed.

## II.
## ARGUMENTS AND AUTHORITIES

### A.    Standards for Motion to Dismiss

#### 1.    Pleading requirements under the  PSLRA and Rules 12(b)(6) and 9(b) for Alleged Misrepresentations and Omissions.

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face."  *In re BP P.L.C., Sec. Litig.*, No. 4:10-md-2185, 2012 U.S. Dist. LEXIS 17787, at *60 (S.D. Tex. Feb. 13, 2012)(citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). However, "conclusory allegations, unwarranted factual inferences, or legal conclusions" are not accepted as true on a motion to dismiss. *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F. 3d 546, 550 (5th Cir. 2007)(quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. Pro. 8(a)(2)).

In addition, under the PSLRA, complaints alleging violations of Section 10(b) "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading," and, "with respect to each act or omission alleged, . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4 (b)(1),(2). These pleading requirements incorporate the Rule 9(b) pleading requirements for fraud claims. *ABC Arbitrage Plaintiff's Group v. Tchuruk,* 291 F.3d 336, 349-50 (5th Cir. 2002). As such, the complaint must set forth the "who, what, when, where and how." *Id.* at 350.

In order to state a claim under Section 10(b), the plaintiff must allege, "in connection with" the purchase and sale of securities: (1) a misstatement or an omission; (2) of material fact; (3) made with scienter; (4) on which plaintiff relied; and (5) that proximately caused the plaintiff's injury. *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006);

*ABC Arbitrage,* 291 F.3d at 348.[5]  In many cases, Plaintiffs failed to specifically and sufficiently allege a misstatement or an omission of a material fact, and/or failed to allege that any such statements were made "in connection with" the purchase or sale of LPHI common stock. Because such allegations fail to satisfy the  heightened pleading requirements of Rule 9(b) and the PSLRA, Plaintiffs' claims must be dismissed.

### 2.     Pleading Requirements for Scienter under the PSLRA and Rules 9(b) and 12(b)(6).

In order to properly plead a "strong inference of scienter," a plaintiff must sufficiently plead, as to each defendant, an "intent to deceive, manipulate, or defraud" or "severe recklessness."  *Indiana Elec. Workers*, 537 F.3d at 533.  "Severe recklessness" is defined as:

> [T]hose highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 866 (5th Cir. 2003) (quoting *Nathenson v. Zonagen, Inc.,* 267 F.3d 400, 408 (5th Cir. 2001)).

The PSLRA "requires that a plaintiff in a securities fraud case, must for 'each act or omission alleged' to be false or misleading, 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009) (quoting 15 U.S.C.

---

[5]  Other than reciting the elements of Rule 10b-5(a) and 10b-5(c) claims, Plaintiffs failed to allege any facts to support such claims separate and apart from their misrepresentation claim under Rule 10b-5(b).  Compl., ¶320. However, a Rule 10b-5(a) and/or (c) claim cannot be based on the alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim.  *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (dismissing the plaintiff's Rule 10b-5(a) and (c) claims because the plaintiff "does not allege any facts that are separate from those already alleged in [the plaintiff's] Rule 10b-5(b) omission claims"); *see also Lentell v, Merrill Lynch & Co*., 396 F.3d 161, 177 (2d Cir. 2005); *SEC v. Kelly*, No. 08-Civ-04612 (CM), 2011 U.S. Dist. LEXIS 108805, at *8 (S.D.N.Y. Sept. 22, 2011).  Accordingly, Plaintiffs' scheme liability claims under Rule 10b-5(a) and (c) claims must be dismissed.

§78u-4(b)(2)).   "To qualify as 'strong' within the meaning of [the PSLRA], an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).   Thus, the plaintiff "must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference."   *Id.* at 328.   In determining whether the inference of scienter is "cogent and compelling," "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."   *Id.* at 324.   Importantly, "scienter must exist at the time the misrepresentation or omission allegedly occurred."   *Magruder v. Halliburton Co.*, No. 05-CV-1156, 2009 U.S. Dist. LEXIS 27561, at *28 (N.D. Tex. Mar. 31, 2009).

When analyzing allegations of scienter against a corporate defendant, such as LPHI, courts must address the allegations of scienter as to *each individual* officer defendant to determine whether the complaint satisfies the heightened pleading requirements of scienter.   *See Ind. Elec. Workers*, 537 F.3d at 533 (holding that courts cannot look to the collective knowledge of all the corporation's officers and employees, but rather must look to the state of mind of each corporate officer who made the alleged misrepresentation); *Southland Sec. Corp. v. Inspire Ins. Solutions Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (same).   Thus, "group pleading" is not allowed in the Fifth Circuit:  "The 'group pleading' doctrine conflicts with the scienter requirement of the PSLRA because, even if a corporate officer's position supports a reasonable inference that he likely would be negligent in not being involved in the preparation of a document or aware of its contents, the PSLRA state of mind requirement is severe recklessness or actual knowledge."   *Southland*, 365 F.3d at 365.   Therefore, scienter allegations "must rest on something more than the defendants' positions with the company . . . [or the defendants'] day-to-day involvement in

the corporation. . . ."   *Pedroli v. Bartek*, 564 F. Supp. 2d 683, 689 (E.D. Tex. 2008); *see also*

*Fin. Acquisition Partners,* 440 F.3d at 287 (holding that corporate officers are not liable solely

because of their day-to-day involvement in the company); *Abrams,* 292 F.3d at 432 (finding

scienter was not properly pled based solely on defendants' positions with the company).

Plaintiffs' non-specific and conclusory allegations fail to sufficiently plead scienter as to

each Defendant and, thus, require dismissal of the Complaint.

**B.**   **Plaintiffs Failed to Adequately Plead "Motive".**

**1.**   **Allegations of "Insider Trading" do not Adequately Plead Scienter.**

Well-established Fifth Circuit precedent establishes that allegations of motive and

opportunity alone are insufficient to support a strong inference of scienter under the PSLRA.

*Southland.*, 365 F.3d at 367.   Notably, although appropriate allegations of motive and

opportunity may enhance the strength of the inference of scienter, "this is true of insider trading

'only' when 'in suspicious amounts or at suspicious times.'"   *Id.* (quoting *Abrams,* 292 F.3d at

435).[6]   "Because corporate executives are often paid in stock and stock options, and often trade

those securities, a court will not infer fraudulent intent from the mere fact that the officers have

sold some of their holdings."   *In re Dell Inc. Sec. Litig.*, 591 F. Supp. 2d 877, 896-97 (W.D. Tex.

2008).   "Suspicion may be generated if the 'sales are out of line with prior trading practices or

[made] at times calculated to maximize personal profit.'" *Ind. Elec. Workers*, 537 at 543 (quoting

*Cent. Laborers*, 497 F.3d at 553); *see also Nathenson*, 267 F.3d at 420-21 ("'Insider' trading

must be 'unusual' to have meaningful probative value."); *Abrams*, 292 F.3d at 435 (holding that

allegations of insider trading were not probative of scienter because "Plaintiffs make no

allegations that these sales are out of line with prior trading practices or at times calculated to

maximize personal profit").

---

[6] *See also Cent. Laborers*, 497 F.3d at 552-53.

In the Complaint, Plaintiffs rely on a single June 18, 2007 sale of LPHI shares by Peden, and with respect to Pardo, Plaintiffs merely cite the sales of LPHI shares by the Pardo Family Trust that occurred during a two-year period.[7]   Conspicuously absent from the Complaint, however, are any allegations about Peden and Pardo's trading history.[8]   Consequently, there is no way for the Court to determine whether the trades are "out of line with prior trading practices," and as a result, no weight can be given to Plaintiffs' allegations of insider trading.[9]

Not only do Plaintiffs fail to provide any trading history for Pardo or Peden, Plaintiffs also fail to allege any facts establishing that the trades were suspiciously made at times calculated to maximize personal profit.[10]   With respect to Peden's single stock sale, given that the price of LPHI stock increased substantially *after* his sale, Peden clearly did not sell to "maximize personal profit" or to prevent imminent (or even long-term) losses in the value of his shares.[11] Moreover, public filings show that, following the June 18th sale, Peden retained 44,097 (pre-split) shares of LPHI stock.[12]   Thus, it makes little sense why Peden retained over 81% of his shares even after the price of the stock continued to rise and still later, when the price began to decline.   Moreover, the timing of the sale can hardly be characterized as suspicious, given that

---

[7] *See* Compl., ¶86.

[8] *See* Compl., ¶¶82-88.

[9] *See, e.g., Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 793 (11th Cir. 2010) ("The shareholders failed to plead any information about any [of the insider defendant's] trading history before the class period.  As a result, there is no way to determine from the complaint that the sales of large numbers of shares is suspicious enough to add to an inference of scienter.  We give the conclusory allegations of insider trading no weight in considering the inference of scienter raised by the complaint.").

[10] *See* Compl., ¶¶82-88.

[11] *See* LPHI historical share prices, available at http://finance.yahoo.com/q/hp?s=LPHI+Historical+Prices.  *In re Bear Stearns Cos., Inc. Sec. Litig.*, 763 F. Supp. 2d 423, 584 (S.D.N.Y. 2011) ("[I]t is clear that courts may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.") (quoting *Malin v. XL Capital, Ltd.*, 499 F. Supp. 2d 117, 134 (D. Conn. 2007)).

[12] *See* Form 4 Statement of Changes in Beneficial Ownership of Securities filed by R. Scott Peden on June 25, 2007, a true and correct copy of which is included in the Appendix as Exhibit A.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 8**

the sale occurred more than sixteen (16) months after Peden allegedly became aware that Life Partners systematically underestimated LEs.[13]

Similarly, with respect to Pardo, Plaintiffs fail to allege that any of the Trust's sales were in suspicious amounts or at suspicious times.[14]   Rather, according to the Complaint, the first sale occurred one (1) year after Pardo purportedly knew that LPHI's business model was unsustainable.[15]   Indeed, Plaintiffs make no effort to connect the sales with any alleged misrepresentation or omission.[16]   In addition, while the Complaint alleges that Pardo sold $11.2 million of common stock, the Complaint also alleges that "Pardo owns approximately 50.3% of [LPHI's] shares . . . ."[17]   Had Pardo been in possession of material non-public information and intended to "maximize his personal profit," one would think he would have caused the Pardo Family Trust to dispose of significant shares long before news of the SEC investigation hit the market.

In addition, the absence of any allegations that Defendant Martin engaged in any improper trading activity further shows that the sales by Defendants Peden and Pardo do not support an inference of scienter.[18]   *See Abrams*, 292 F.3d at 435 ("[E]ven unusual sales by one insider do not give rise to a strong inference of scienter when other defendants do not sell some or all of their shares during the Class Period.").  Finally, the length of the class period—more than five (5) years—is "exceedingly long," such that it weakens any inference of scienter that could be drawn from the allegations regarding Peden and Pardo's stock sales.  *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007) (finding that a 46 month class period "weakens

---

[13] *See* Compl., ¶13 (alleging knowledge of the "unsustainable" business model by February 2006).
[14] *See* Compl., ¶86.
[15] *See* Compl., ¶13.
[16] *See id.*
[17] *See* Compl., ¶12.
[18] *See* Compl., ¶¶ 82-87.

any inference of scienter that could be drawn from the timing of defendants' trades."). Accordingly, Plaintiffs' conclusory allegations concerning Pardo's and Peden's sales of LPHI shares are patently insufficient to support an inference of scienter, and therefore, no weight can be given to such allegations in considering the strength of the inference of scienter.

2.      **Allegations of Dividend Payments do not Adequately Plead Scienter.**

Plaintiffs make repeated references in the Complaint to the dividends paid by LPHI and to Pardo's receipt of such dividends.[19]   However, the allegation of an officer's receipt of dividends is the very type of non-individualized allegation that cannot be considered as circumstantial evidence of scienter because it is well-established that any incentive or benefit that is common to all shareholders lacks the requisite concrete and personal nexus to the person alleged to have made the misstatement or omission.   *Ind. Elec. Workers*, 537 F.3d at 544 ("Scienter in a particular case may not be footed solely on motives universal to corporate executives."); *Patel v. Patel*, 761 F. Supp. 2d 1375, 1381 (N.D. Ga. 2011) ("[T]he motivation to maintain a dividend stream does not establish scienter . . . .").

The facts in *In re Yukos Oil Co. Sec's Litig.*, No. 04-CIV-5243 (WHP), 2006 U.S. Dist. LEXIS 78067 (S.D.N.Y. Oct. 25, 2006) are remarkably similar to the instant facts and, thus, warrant further discussion.  In that case, the plaintiffs instituted a securities fraud class action suit against the defendants Yukos Oil Company ("Yukos"), Khodorkovsky (its President), and Menatep, the majority shareholder of Yukos, which was a Gibraltar company in which Khodorkovsky owned a 28% interest.  The plaintiffs claimed that the defendants violated the federal securities laws because Yukos failed to make various disclosures, overstated its reported profits, and understated its tax liability.  *Id.* at *4-16.  Addressing the defendants' motion to dismiss on the grounds that the plaintiffs failed to adequately allege scienter, the *Yukos* court

---

[19] Compl., ¶¶12, 82-84, 88.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 10**

noted that, in alleging scienter, [m]otives that are generally possessed by most corporate directors and officers do not suffice." *Id.* at \*55 (quoting *Kalnit v. Eichler*, 264 F.3d 131, 139 (2nd Cir. 2001)).  In *Yukos,* the plaintiffs alleged that Khodorkovsky and Menatep, as Yukos shareholders, "possessed a separate motive to fraudulently inflate Yuko's stock price in order to obtain larger dividends from the Company [Yukos]." *Id.* at \*58.  Specifically, the plaintiffs alleged that Khodorkovsky received approximately 28% of the $1.2 billion in dividends received by Menatep.

The *Yukos* court flatly rejected plaintiffs' claim that Khodorkovsky's receipt *of over $330 million* in dividends supported a finding of a "concrete and personal" motive sufficient to support a strong inference of scienter, stating, in pertinent part, as follows:

> Here, Plaintiffs allege that Menatep, Khodorkovsky and Lebedev [the CEO of Menatep] were motivated to defraud investors by the substantial dividends they received during the Class Period.  In fact, the Complaint alleges that Menatep received approximately **$1.2 billion in dividends** during the Class Period, which it distributed to Lebedev and Khodorkovsky   However, **these Defendants benefited in the same way as all Yukos stockholders who also received dividends.  The Complaint alleges merely the passive maintenance of stock positions and the receipt of dividends in due course, not 'unusual insider trading activity during the Class Period.'**  For example, the Complaint does not allege that these Defendants sold off their holdings after realizing those dividends or increased their stock holdings just in time for Yukos to declare a dividend.  **Without an allegation differentiating Defendants' motives from those of every other Yukos shareholder, Plaintiffs allege nothing more than the generalized desire to maximize stock value.**  Thus, the Complaint fails to plead facts to support a strong inference that Menatep, Khodorkovsky or Lebedev had the motive to commit securities fraud.

*Id.* at \*59 (internal citations omitted)(emphasis added).  Accordingly, the *Yukos* court held the plaintiffs failed to adequately plead scienter and, therefore dismissed the plaintiffs' complaint. *Id.*

Similarly, in this case, Plaintiffs allege that "Pardo decided to loot the company by . . . causing LPHI to pay abnormally large and unsustainable dividends – more than half of which

would go to his Gibraltar trust . . . ."[20]  As in *Yukos,* this allegation fails to support a strong inference of scienter as to Defendant Pardo, and hence LPHI, because, when dividends were issued to all shareholders, the trust in which Defendant Pardo holds an interest, merely shared in the same benefits that were received by all other LPHI shareholders, including the putative class members.[21]  *See also Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 556-56 (S.D.N.Y. 2010) (holding plaintiff's allegation that the defendant CEO's ownership of 19% of the stock and his pro rata receipt of a $15 million special dividend payment did not support a strong inference of scienter as a matter of law).  Further, as in *Yukos,* the Complaint contains no allegations of suspicious transactions by Pardo that could be probative of scienter, such as selling off his holdings after receiving the dividends or increasing his stock holdings just before dividends were declared.[22]  Therefore, Plaintiffs' allegations are insufficient to support a strong inference of scienter, particularly when considering, as the Court must, the nonculpable explanation that LPHI was merely continuing, throughout the putative class period, its well-established dividend policy.[23]  *See Tellabs*, 551 U.S. at 314 (requiring courts to consider "any opposing inference of nonfraudulent intent" when assessing whether alleged facts give rise to a strong inference of scienter).

Accordingly, the fact that dividends were consistently issued throughout the Class Period (and long before) to all shareholders does not, as a matter of law, support a strong inference of scienter—"were the opposite true, the executives of virtually every corporation in the United States would be subject to fraud allegations."  *Abrams*, 292 F.3d at 434.

---

[20] Compl., ¶84.

[21] *See Compl.*, ¶12.

[22] *See, generally,* Compl.

[23] *See* Compl., ¶88 (table listing dividends issued by LPHI during the Class Period); *see also* Forms 8-K from May 22, 2002 to February 19, 2007 concerning LPHI's consistent practice of issuing dividends long before the putative class period, available at  http://www.sec.gov/cgi-bin/browe-Edgar?company=&match=&CIK=LPHI&filenum=& State=&Country=&SIC=&owner=excluded&Find=Find+Companies&action=getcompany.

**C.     Plaintiffs Failed to Adequately Plead a Section 10(b) Claim Derived from the "Unsustainable Business Model" Allegations.**

Plaintiffs devote 15 pages of their Complaint to a purported description of LPHI's "unsustainable business model,"[24] yet thereafter fail to specifically identify how that "unsustainable" model caused LPHI's statements, whether financial or otherwise, to be materially false and misleading.  Indeed, the "unsustainable business model" allegations in the Complaint highlight the ultimate fallacy of Plaintiffs' case – in reality, Plaintiffs are claiming that the manner in which LPHI's non-public subsidiary, LPI, offered and sold life settlements was improper.  However, in a Section 10(b) case, Plaintiffs must not only specifically identify the false statements made to the shareholders, but they must also specifically allege that those misrepresentations were made "in connection with" the purchase or sale of a security.  *La. Sch. Emp. Ret. Sys. v. Ernst & Young*, 622 F.3d 471, 478 (6th Cir. 2010).  Because Plaintiffs have failed to satisfy either requirement, Plaintiffs' claims based upon an alleged "unsustainable business model" must be dismissed.

**1.     Plaintiffs Failed to Adequately Identify any Alleged Misrepresentations.**

Plaintiffs repeatedly and generically allege that, throughout the putative Class Period, all of LPHI's "reported financial earnings" were false and misleading and because they were generated by a "flawed and unsustainable business model" "through the use of false LE estimates."[25]  Importantly, however, Plaintiffs do not allege that, or explain how, the reported financial earnings were, in fact, inaccurate as a result of the alleged "flawed and unsustainable business model."[26]  In other words, regardless of the "sustainability" of the business model in the future, Plaintiffs do not assert that the "business model" from May 26, 2006 through June 17,

---

[24] Compl., pp. 16-30.
[25] *See* Compl., ¶¶91, 100, 101, 104, 108, 110, 113-114, 116-117, 125, 131, 134-136, 142-143, 146, 156, 165, 170, 173-175, 179, 181-183, 187, 192, 194, 196, 197, 201, 204, 208.
[26] *See, generally,* Compl.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 13**

2011, caused LPHI's reported financial results to be different than what was reported.  Nor do Plaintiffs allege any facts to explain how LPHI's business was unsustainable given the fact that (i) LPHI's operating subsidiary has been in business since 1991, and (ii) neither LPHI nor its subsidiary is currently, or has ever been, in bankruptcy.[27]

By analogy, in *Hopson v. MetroPCS Commc'ns, Inc.*, No. 3:09-CV-2302-G, 2011 U.S. Dist. LEXIS 47177, at *72 (N.D. Tex. Mar. 25, 2011), the plaintiffs instituted a securities fraud class action against a company and certain of its officers alleging, *inter alia*, that the defendants' statements about the company's historical growth were false and misleading as a result of the company's failure to disclose the likely effects the recessionary economy would have on the company's business in the future.  The District Court held the plaintiffs failed to adequately allege any misrepresentation or omission because the plaintiff did not dispute that the company did, in fact, experience growth during the class period, and because the plaintiff failed to plead with particularity *how* the company was suffering from the recessionary economy.  *Id.* at 72-73; *see also In re Toyota Motor Corp. Sec's Litig.*, No. CV 10-922 DSF, 2011 U.S. Dist. LEXIS 75732, at *8 (C.D. Cal. July 7, 2011) ("Plaintiffs claim that the financial disclosures were misleading because they did not disclose that the positive financial results came at the expense of declines in safety and quality.  This theory fails because the statements made no mention of safety and quality at all.  The accurate financial data did nothing to affirmatively create an impression of a state of affairs that differs in a material way from the one that actually existed.") (internal quotations omitted).  Accordingly, Plaintiffs failed to allege with requisite particularity how the statements containing reported financial results were rendered false or misleading by the

---

[27] *See generally,* Compl.

alleged "flawed and unsustainable business model," and therefore, Plaintiffs fail to adequately

allege a material misrepresentation or omission, thereby requiring dismissal of the Complaint.[28]

### 2. Plaintiffs' Allegations that Defendants Used Fraudulent Life Expectancy Estimates to Sell Policies Fail to Satisfy the Rule 9(b) and PSLRA Heightened Pleading Requirements.

Plaintiffs' "unsustainable business model" theory is based on the faulty hypothesis that

LPI utilized "false" life expectancy estimates.  However, Plaintiffs have failed to allege, other

than in a conclusory manner, that the estimates were false, how each Defendant knew the

estimates were false, and when each Defendant knew the estimates were false.[29]  Plaintiffs'

inability to sufficiently plead these facts is fatal to their claims.

### a. Neither Dr. Cassidy's Methodology nor Peden's Alleged Incorrect Descriptions thereof Impose Liability on Defendants.[30]

Plaintiffs allege that Dr. Cassidy's practices in projecting LEs for LPI's use in facilitating

life settlements deviate from the purported "standard practices" in the life settlement industry[31]

---

[28] Additionally, even assuming, *arguendo*, Plaintiffs adequately plead a material misrepresentation or omission concerning the "flawed and unsustainable business model," Plaintiffs plead no facts to show that any of the Defendants knew or were severely reckless in not knowing about the alleged "flawed and unsustainable business model" at the time each Defendant purportedly made his respective statement.  *See, e.g., Magruder,* 2009 U.S. Dist. LEXIS 27561, at *28 (scienter must exist at time of misrepresentation or omission).

[29] For example, Plaintiffs conclusorily allege that "LPHI" uses one life expectancy to determine if "it will purchase any given policy" and another to give to purchasers of the policy.  (Compl., ¶56).  Plaintiffs also allege that "LPHI's" doctor always provides a shorter life expectancy to be utilized by purchasers.  (*Id.*).  Notably, however, Plaintiffs failed to provide any factual basis for making such allegations, nor do Plaintiffs identify how each Defendant would have known of each of such allegations, when they would have known, or how they would have known.  Such failures violate the heightened pleading requirements for securities fraud class action suits.  *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 549 (N.D. Tex. 2003) ("It is not sufficient to simply allege certain facts that support a final conclusion, when those 'facts' themselves are conclusory; the PSLRA is satisfied only by facts, not conclusory allegations.").

[30] Plaintiffs also allege that Defendant Pardo hired Dr. Cassidy in 1999 and that, prior to his hiring, neither Pardo nor LPHI conducted any due diligence of Dr. Cassidy. (Compl., ¶¶57-58, 60.)  Such allegations are not only inaccurate as to LPHI, but are also irrelevant to Plaintiffs' claims, as LPHI did not become the publicly-traded parent of LPI until 2000 – after the hiring of Dr. Cassidy. *See* LPHI's Form 10-KSB for fiscal year ending February 29, 2000, available at http://www.sec.gov/Archives/edgar/data/49534/000106083000000239/0001060830-00-000239-0001.txt.  Thus, none of the activities associated with the hiring of Dr. Cassidy can be actionable, as they were not done in connection with the offer or sale of securities.  Further, Plaintiffs fail to point to any material misstatements made by any Defendant having any connection with Dr. Cassidy's hiring.  Accordingly, these allegations are superfluous.

[31] Defendants dispute the fact that a "standard practice" actually exists in the industry and, to the extent it exists, the timing of when such "standard practice" emerged.  *See, e.g.,* Paul Siegert, *Evolution of Life Expectancies in the Life*

---

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 15**

because he is a medical doctor and not an actuary, and because he uses mortality data generated by the U.S. Government.[32]   Of course, this is not a suit against LPI.   Accordingly, LPI's utilization of Dr. Cassidy and, thus, his methodology, is *not* at issue, nor could it be since the life settlement transactions are not securities under the federal securities laws.[33]   Therefore, Dr. Cassidy's provision of LEs was not, and is not, "in connection with the purchase or sale of a security."[34]

Plaintiffs then attempt to bootstrap Dr. Cassidy's methodology into a claim for securities fraud when they allege that Peden, in October and November 2008 misrepresented "to an investor" and to "buyers' agents" that a different actuarial table was used by Dr. Cassidy than the Government table that was actually being used.[35]   However, for Peden's alleged statements to be actionable, such statements must have been made "in connection with" the purchase or sale of LPHI stock.[36]   Accordingly, Peden's statement to a non-LPHI shareholder cannot give rise to either liability or establish a strong inference of scienter.

Importantly, the Complaint interchangeably refers to purchasers of life settlements and purchasers of LPHI stock as "investors."[37]   Thus, Peden's statement to an "investor" could just as easily be a reference to his communication to a life settlement purchaser and not an LPHI shareholder.  If his statement were to a life settlement purchaser, it could not have been made in connection with the purchase or sale of a security and, thus, is not actionable.  Moreover, even

---

*Insurance Secondary Market …Current Trends and New Developments*, Life Insurance Settlement Series Edition No. VI (Aug. 4, 2010)("Most LE underwriters start with current medical records to determine the medial  history of the insured being considered for evaluation, and most use the debit/credit methodology.  However, **underwriting guidelines vary substantially among LE underwriters**, and most of the life settlement underwriters have developed unique mortality curves based on their own experience of mortality patterns.")(emphasis added)

[32] *See* Compl., ¶¶62-64.
[33] *See SEC v. Life Partners,* 87 F.3d at 549.
[34] *See*  15 U.S.C. §78j(b).
[35] Compl., ¶¶ 68, 77-78.
[36] *See*  15 U.S.C. §78j(b).
[37] *Compare* Compl., ¶¶2, 4 *with* ¶¶14, 19.

assuming, *arguendo*, that such statement was to a "shareholder" of LPHI, the Complaint is devoid of any facts to support a claim that the statement was made in connection with that shareholder's purchase of LPHI stock.[38]

Finally, because Plaintiffs do not allege that LPHI misrepresented Dr. Cassidy's methodology to its shareholders, even a purportedly inaccurate statement by Peden to a "shareholder" would not alter the total mix of information available to LPHI's shareholders, (nor do Plaintiffs allege that same occurred), thus precluding any liability with respect to that statement.[39]   In short Peden's alleged incorrect statements provide no basis for liability against any Defendant.

### b. Defendants did not Know that Dr. Cassidy's LEs were Materially Short.

Plaintiffs' repeated allegations that Defendants knew Dr. Cassidy's LEs were materially short not only defy logic, but defy the very documents on which Plaintiffs purportedly rely in support of this claim.

As conceded in the Complaint, Dr. Cassidy did not begin providing life expectancy estimates to LPI until after his predecessor, Dr. Kelly, passed away.[40]   Thus, Dr. Cassidy's first LE estimates were not provided until October 1999.[41]   According to Plaintiffs, the average LEs generated by Dr. Cassidy from 2000-2005 was 3.8 years.[42]   By way of example, then, the insureds underlying policies facilitated for the first half of calendar year 2000 would not have

---

[38] *See* Compl., ¶¶68, 77-78.

[39] *See, e.g., SEC v. Morgan Keegan & Co.*, No. 1:09-cv-1965-WSD, 2011 U.S. Dist. LEXIS 71481, at *31-37 (N.D. Ga. June 28, 2011)(rejecting SEC's argument that statements made to four investors, out of thousands, were sufficient to alter the total mix of information available to the public, holding that "[t]he SEC must do more than show a few isolated instances of alleged broker misconduct to obtain the relief it seeks.  This is especially and essentially true because, in SEC enforcement actions, the SEC does not have to show that investors relied on the alleged misrepresentations.").

[40] Compl., ¶57.

[41] Dr. Kelly passed away on September 20, 1999.  *See* the redacted, certified copy of Dr. Kelly's death certificate, included in the Appendix as Exhibit B.

[42] Compl., ¶67.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 17**

reached the estimated LE until, on average, the latter half of calendar year 2003.  For policies facilitated in the latter half of calendar year 2000, the insureds would not have reached the estimated LE until, on average, the first half of calendar year 2004, and so on.

Despite the foregoing, Plaintiffs rely on LPHI Audit Committee minutes discussing the nine months ended November 30, **2002** in alleging that "at least as early as 2003, it was apparent . . . that the LEs used . . . were materially short."[43]  Plaintiffs then assume that the reference in the minutes related to *Dr. Cassidy's* LEs when Plaintiffs allege that Pardo and Peden did not "determine why Life Partners was not seeing the expected number of maturities based on Cassidy's LEs."[44]  However, neither the minutes nor Plaintiffs' conclusory allegation establish "knowledge" regarding the purported inaccuracy of Dr. Cassidy's LEs as of November 2002, especially when considered in light of Dr. Cassidy's 3.8 year average LE.  As the U.S. Supreme Court has noted, "[d]etermining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1950; *see also United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 342 (S.D.N.Y. 2009)(applying common sense in rejecting claim of securities fraud).  Common sense dictates that Plaintiffs' conclusory leap of faith must be rejected as a basis for imposing knowledge, and thus, securities fraud liability on Defendants.

Plaintiffs then misrepresent that "reports filed by LPHI [sic] for 2003 through 2009 [with the Texas Department of Insurance ("TDI")] reveal that insureds underlying approximately 80% of matured policies that the Company brokered had outlived Cassidy's LEs."[45]  To the contrary, however, the TDI reports (which were filed by LPI, not LPHI) establish that **45.6%** of the matured policies from 2003-2009 that were arguably based on Dr. Cassidy's LEs actually

---

[43] Compl., ¶70.
[44] Compl., ¶71.
[45] Compl., ¶72.

**matured before, or in the month of, the estimated LE**.[46]   Moreover, the reports establish that

an additional 14.64% of the policies matured within 1 year of the LE projection, and another

12.97% matured within 2 years of the LE projection.[47]   Therefore, more than **73%** of the

maturities from 2003-2009 were on, before, or within 2 years of Dr. Cassidy's estimates – hardly

an indication that Dr. Cassidy's LEs were 8 to 9 years off.[48]

In addition to the foregoing, Plaintiffs provide their own table in the Complaint, from

unknown origin, claiming that it purports to depict the policies exceeding Dr. Cassidy's LEs "for

the universe of policies from which his success rate is measurable."[49]   However, the chart and

surrounding allegations fail to satisfy the Rule 9(b) requirements, as the chart fails to specifically

allege the source of the information, and fails to specify whether each of the Defendants received

such information, in what form, when, and whether the conclusions Plaintiffs now draw were

drawn by Defendants during the relevant time periods.   Absent that information, the chart and

associated allegations must be rejected.   *See Abrams,* 292 F.3d at 432 (holding allegations of the

existence of company reports "must have corroborating details regarding the contents of the

allegedly contrary reports, their authors and recipients").

One of the Complaint's more puzzling allegations is the contention that LPHI "disclosed

in its periodic filings with the SEC that it advanced money to make premium payments . . . when

the amounts escrowed for premiums was depleted."[50]   Plaintiffs then use this public disclosure to

support their allegation that Defendants knew the LEs were short.[51]   If, in fact, Plaintiffs are

---

[46] Included in the Appendix as Exhibits C-1 through C-7 are true and correct copies of the portions of LPI's reports
filed with the TDI from 2003-2009 showing the maturities during each of those respective years.  It is appropriate
for Defendants to include same with the Motion to Dismiss because they are referred to in the Complaint.  *Dorsey*,
540 F.3d at 338.  Exhibit D in the Appendix is a chart summarizing the Cassidy-related data set forth in Exhibit C.
[47] *See* Exhibit D in the Appendix.
[48] *See* Compl., ¶67.
[49] Compl, ¶69.
[50] Compl., ¶73.
[51] Compl., ¶73.

correct, and the disclosure of the "steady" increase in premium payments imputed knowledge to Defendants of the LE underestimation, then, because that increase in payments was publicly disclosed, the public, in turn, was provided with the knowledge of the LE underestimation, and Plaintiffs' fraud claim vanishes. *See, e.g., In re Sun Microsystems,, Inc. Sec. Litig.*, No. C 89 20351 RPA, 1990 U.S. Dist. LEXIS 18740, at *7 (N.D. Cal. Aug. 20, 1990)("If the material containing the alleged omission actually discloses the facts that plaintiffs claim are absent there is obviously no omission.").

Plaintiffs next allege that a "consultant" retained by a "firm" in 2006 recommended in a "report" that LPI "track, analyze and validate" Dr. Cassidy's LEs.[52]   This allegation fails to satisfy Rule 9(b) because it fails to specifically identify the "firm," the "report," to whom the report was provided, and when the report was provided. *See Southland,* 365 F.3d at 370-71. Further, and more importantly, the allegation fails to support any basis for the imputation of knowledge of the alleged underestimation of LEs – indeed Plaintiffs make no claim that the report so found.  Thus, this allegation must also be disregarded.

Finally, Plaintiffs rely on a complaint filed by, and a subsequent settlement LPI made with, the Colorado Securities Division as apparent support for Defendants' knowledge of the underestimation of LEs.[53]   Importantly, *Plaintiffs do not allege* that the Colorado action was based, in whole or in part, on *Dr. Cassidy's* LEs.  Indeed, the only allegation regarding LEs contained in the Colorado Securities Commission's 17-page complaint is the one quoted by Plaintiffs.[54]   It is impossible to discern from this one statement whether the allegation related in

---

[52] Compl., ¶74.
[53] Compl., ¶76.
[54] *See* Compl., ¶76 (quoting from the Colorado complaint the following allegation:  "the high frequency rate in which viators outlived life expectancies predicted by Life Partners.").  *See* First Amended Complaint for Injunctive and Other Relief filed in *Joseph v. Life Partners, Inc.*, Case No. 2007 CV 5218, ("Colorado Action"), a true and correct copy of which is included in the Appendix as Exhibit E.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 20**

any way to Dr. Cassidy's LEs.  Notably, the publicly-available settlement of the Colorado case contained no findings or admissions regarding the accuracy or inaccuracy of Dr. Cassidy's LEs, as the settlement only related to the claim by Colorado that the life settlements were securities under Colorado law.[55]  Thus, Plaintiffs' reliance on the Colorado case is yet another red herring, having no bearing on this case or on Defendants' alleged knowledge of the asserted underestimation of LEs.

**D.      Plaintiffs Failed to Adequately Plead a Section 10(b) Claim Based on the Failure to Disclose a Known Trend or Risk.**

     **1.      LPHI's Risk Disclosures were Adequate.**

Plaintiffs complain of the risk disclosures relating to life expectancies contained in LPHI's Forms 10-K for fiscal years 2006 through 2010, asserting that they were materially false and misleading because they failed to disclose (1) the retention of Dr. Cassidy, and (2) LPHI's alleged awareness that Dr. Cassidy's life expectancies were "materially flawed and systematically understated."[56]  However, as set forth above, the Texas Department of Insurance records relied on by Plaintiffs do not support the conclusion that the life expectancy estimates were "materially flawed" or "systematically understated."   Further, and as discussed above, Plaintiffs have failed to point to a single document within any Defendant's possession at the relevant time periods that would have supported such a conclusion.  In addition, Plaintiffs failed to allege how the retention of Dr. Cassidy was material to the shareholders of LPHI. Accordingly, Plaintiffs have failed to identify a material misstatement and have failed to establish scienter on the part of any Defendant in connection with the risk disclosures.

---

[55] *See* Stipulation for Permanent Injunction and Other Relief, filed in the Colorado Action, and attached order of Permanent Injunction and Other Relief, a true and correct copy of which is included in the Appendix as Exhibit F. Conveniently omitted from the Complaint is a reference to the Stipulation that resolved the action, wherein the Colorado Securities Commission represented that "no investor has alleged or asserted any impropriety against Defendants with respect to their investment . . . ."
[56] Compl., ¶¶92, 105, 124, 166, 193.

**2.     Defendants were not Required to make Disclosures Regarding Dr. Cassidy's Life Expectancies Pursuant to Item 303 of Regulation S-K.**

Plaintiffs allege that LPHI's Forms 10-K were false and misleading because they failed to disclose "a known trend" that the business model was "built upon false LEs" which "were reasonably likely to result in, a material favorable or unfavorable impact on the Company's net revenue."[57]   As a result, Plaintiffs claim that Item 303 of Regulation S-K required disclosure of this "known trend."[58]   In the first instance, of course, Plaintiffs "must allege facts showing defendants knew of an adverse trend, the material impact of that trend, and 'that the future material impacts are reasonably likely to occur from the present-day perspective.'"   *Belodoff v. Netlist*, No. SACV 07-00677 DOC (MLGx), 2009 U.S. Dist. LEXIS 78309, at *27 (C.D. Cal. Sept. 1, 2009)(quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998)). As discussed above, Plaintiffs have wholly failed to adequately plead that Defendants knew any of the foregoing.   Further, LPHI's historical financials indisputably refute the existence of a "known trend" that could impact its net sales, revenue, or income.

On this issue, *Belodoff* is instructive.   In that case, plaintiff alleged fraud in connection with the defendant company's IPO, asserting that the defendant failed to disclose that customer demand for its products was in significant decline.[59]   The court originally dismissed the complaint based, in part on this allegation, but gave plaintiff leave to amend, holding that if the defendant "already knew that its customers were significantly reducing their orders at the time of the IPO and had been for some time, Defendants [sic] representation of such an event as a contingency in the risk disclosure statement would be deceitful."[60]   In dismissing the same claim from plaintiff's second amended complaint, the court noted that the sales figures set forth in

---

[57] Compl., ¶¶91, 104, 125, 165, 192.
[58] *Id.*
[59] 2009 U.S. Dist. LEXIS 78309, at *19.
[60] *Id.* at *8.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 22**

defendant's public filings demonstrated "an increase and flat-lining of sales up and through the IPO," thereby defeating plaintiff's claim that defendants knew of the "significant decline in customer demand.[61]

Likewise, in this case, LPHI's business, financial condition, and operations for fiscal years 2006–2010, consistently exhibited dramatic improvement, with revenues increasing from $20 million in fiscal year 2006 to $108.8 million in fiscal year 2010, and net income increasing from $1.1 million in fiscal year 2006 to $26.1 million in fiscal year 2010.[62]  Such figures defy Plaintiffs' claim that LPHI failed to disclose a known trend that was reasonably likely to have a material unfavorable impact on the Company's net revenue.  This is especially true in light of the inadequacy of Plaintiffs' allegations regarding Defendants' knowledge of the purported underestimation of LEs, as discussed, *supra*.

In any event, however, "a violation of Item 303's reporting requirements does not automatically give rise to a material omission under Rule 10b-5."  *Oran v. Stafford*, 226 F.3d 275, 288 (3rd Cir. 2000); *see also In re Enron Corp. Sec. Litig.*, 258 F.Supp. 2d 576, 633 n.63 (S.D. Tex. 2003) ("[A] violation of Item 303 does not establish a duty to disclose that may give rise to liability under § 10(b).") (citing *Oran* and cases cited therein); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, (S.D.N.Y. 2006) (holding that "even if the Complaint's allegations were sufficient to establish a violation of [Item 303], the violation alone would be insufficient to establish Defendants' liability under Section 10(b) and Rule 10b-5").  Accordingly, even if Plaintiffs adequately alleged a violation of Item 303, which they do not,

---

[61] *Id.* at *22-26.

[62] *See* LPHI's Form 10-KSB for the fiscal year ending February 28, 2006, available at http://www.sec.gov/Archives/edgar/data/49534/000114420406022814/v044357_10ksb.htm, and LPHI's Form 10-K for the fiscal year ending February 28, 2011, available at http://www.sec.gov/Archives/edgar/data/49534/000114420411066513/v241450_10k.htm.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 23**

such allegations would still be insufficient to support liability under Section 10(b) and Rule 10b-5 because the standard for "materiality" under Section 10(b) is more limited.  *Id.*

**E.**   **Plaintiffs Failed to Adequately Plead a Section 10(b) Claim Based on Statements Made in Analyst Calls and Press Releases.**

Plaintiffs identify and quote from a host of press releases and analyst calls, yet, fail to specifically identify pr provide factual support for any misrepresentations or omissions contained in those press releases and analyst calls.  In so doing, Plaintiffs have failed to plead with particularity "as to *each* statement alleged to be misleading" both what the person making the misrepresentation obtained thereby and the reason why the statement was fraudulent.[63]   *ABC Arbitrage,* 291 F.3d at 350; *see also In re 2007 Novastar Fin'l Inc., Sec's Litig.*, 579 F.3d 878, 882-83 (8th Cir. 2009).  Accordingly, all statements included in Plaintiffs' block quotations and descriptions of statements that are not specifically plead with particularity must be disregarded in the Court's consideration of whether the Complaint satisfies the pleading requirements of Rule 9(b) and the PSLRA.

Furthermore, pursuant to Section 21E of the PSLRA, a defendant "shall not be liable with respect to any forward-looking statement, whether written or oral," where the forward-looking statement is "[i]dentified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement."   15 U.S.C. §77z-2(c)(1).  In other words, Section 21E of the PSLRA sets forth a safe harbor from liability such that "even if the plaintiff could *prove* that the defendants made a forward-looking statement with actual knowledge of its falsity, the defendants would not be liable if the statement was immaterial or accompanied by meaningful cautionary language."  *Hopson v. MetroPCS Commc'ns, Inc.*, No.

---

[63] *See, e.g.,* ¶¶99, 119, 140, 154, 158, 160, 167.

3:09-CV-2392-G, 2011 U.S. Dist. LEXIS 47177, at *65 (N.D. Tex. Mar. 25, 2011) (emphasis in original).  A "forward-looking statement" is defined under 15 U.S.C. §77z-2-(i)(1) as a statement that contains (A) "a projection of revenues, income… or other financial items," (B) "a statement of the plans and objectives of management for future operations;" or (C) "a statement of future economic performance."

Because the press releases quoted in the Complaint contained "forward-looking statements" accompanied by meaningful cautionary language, such statements are not actionable as a matter of law.[64]  For example, in paragraph 129, Plaintiffs quote from a press release stating that LPHI "predicted record earnings," "expects to report first quarter earnings," and that "[r]esults for the quarter are expected to show a 33% increase in earnings…."  As statements of "projections" and "future financial performance," such statements are unquestionably covered forward-looking statements.  15 U.S.C. §77z-2-(i)(1).  Moreover, each of the press releases contained cautionary language specifically addressing the forward-looking nature of the financial projections.[65]  *Id.; see also Hopson*, 2011 U.S. Dist. LEXIS 47177, at *60.  Accordingly, all forward-looking statements made in the LPHI's press releases are not actionable as a matter of law.[66]

Furthermore, it is well-settled that "generalized, positive statements about the company's competitive strengths, experienced management, and future prospects are not actionable because

---

[64] *See* Compl., ¶¶ 100, 101, 108, 113, 116, 129, 133, 135, 143, 155, 170, 172, 173, 177, 181, 187, 195, 196, 203.

[65] A true and correct copy of the June 16, 2008 LPHI Form 8-K and attached press release containing the requisite cautionary language is included in the Appendix as Exhibit G, and the remaining Forms 8-K and exhibits thereto containing the requisite cautionary language are available at available at http://www.sec.gov/cgi-bin/browe-Edgar?company=&match=&CIK=LPHI&filenum =&State=&Country=&SIC=&owner=excluded&Find=Find +Companies&action=getcompany.  *See* 15 U.S.C. 77z-2(e) ("On any motion to dismiss based upon section (c)(1) [the forward-looking statement safe harbor], the court **shall** consider any statement cited in the complaint and **any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant**.") (Emphasis added).

[66] Moreover, even if such statements were not accompanied by meaningful cautionary statements, which they were, Plaintiffs have failed to allege facts creating a strong inference that Defendants had actual knowledge that the statements of projections were false made.  *See Southland*, 365 F.3d at 371.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 25**

they are immaterial." *Southland Sec. Corp.*, 365 F.3d at 372 (holding that the statement in news article by the company's spokesperson that "Our fundamentals are strong," as well as the statement in a press release that the company was "making steady progress" were "obviously immaterial puffery").   Such generalized statements are non-actionably puffery "[b]ecause analysts rely on facts in determining the value of a security, [and thus,] these statements are certainly not specific enough to perpetrate a fraud on the market." *Id.* at 372 (internal quotations omitted).   Further, "[c]ombining puffery with accurate historical statements does not render the puffery material."   *In re XM Satellite Radio Holdings Secs. Litig.*, 479 F. Supp. 2d 165, 177 (D.D.C. 2007).   Here, many of the quoted statements contained in press releases and analysts calls that Plaintiffs assert constitute material misrepresentations are nothing more than corporate puffery and are, thus, immaterial.[67]   For example, in paragraph 110, Plaintiffs cite to the June 14, 2007 press release wherein Defendant Pardo is quoted as stating that, "[a]s these results clearly demonstrate, **we believe our outstanding performance** this quarter is a direct result of the continuing growth in the life settlement market coupled with **our unique ability** to provide **excellent service within a very reasonable cost structure**." (Emphasis added).   Such vague statements of corporate optimism are not relied upon by analysts and investors when valuing the Company, and therefore, such statements are immaterial and, thus, are not actionable as a matter of law.[68]   Accordingly, all statements contained in press releases and made on analyst calls cited

---

[67] Compl., ¶¶100, 108, 110, 113, 116, 126, 129, 133, 135, 137, 143, 146, 147, 155, 170, 175, 177, 178, 181, 195, 196, 201, 203, 208, 210.

[68] *See also Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 U.S. Dist. LEXIS 60894, at *8-13, (N.D. Cal. Mar. 21, 2011) (finding defendant CEO's statements on analyst calls and press releases that "[t]he volume growth in Q4 was driven by a tremendous sales effort," that "[w]e are pleased that we are off to a strong start in 2007[;] … our solid growth in volume and revenue on an increasing base of customers is very gratifying," and that "[w]e've made significant progress in all areas" all constitute "generalized statements of optimism that constitute non-actionable puffery") (internal quotations omitted); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D.Cal. 2005) (finding defendant CEO's claims on analyst calls and in press releases of "'industry leading' growth, growth that 'positions us beautifully,' 'measurable progress,' 'continuing improvements,' 'accomplishments

by Plaintiffs that constitute "forward-looking statements" or "corporate puffery" are not actionable as a matter of law, and, thus, Plaintiffs' claims in connection therewith must be dismissed.[69]

**F.    Plaintiffs Failed to Adequately Plead a Section 10(b) Claim for Accounting Fraud.**

Plaintiffs, in essence, allege that Defendants are liable under Section 10(b) because LPHI issued a Restatement regarding a variety of accounting issues, including revenue recognition.[70] However, Plaintiffs have neglected to properly plead a required element of that claim – scienter – which necessitates its dismissal.  This is especially true with respect to Defendants Pardo and Peden who are not alleged to be accountants or to have any accounting expertise sufficient to challenge the treatment given to any particular transaction.  *See SEC v. Todd*, No. 03CV2230 BEN (WMc), 2006 U.S. Dist. LEXIS 41182, at *20 (S.D. Cal. May 30, 2006).  Furthermore, even as to Defendant Martin, who was the CFO for only part of the time Plaintiffs allege Defendants engaged in accounting fraud, Plaintiffs make no allegations that he was aware of any wrongdoing or directed any improper activity.  In short, all of Plaintiffs' "accounting fraud" claims must be dismissed as failing to adequately plead scienter.

**1.    Plaintiffs Failed to Plead Scienter with Respect to the Revenue Recognition Claims.**

Plaintiffs claim that LPHI prematurely recognized revenue in violation of GAAP and misrepresented its revenue recognition policies, yet Plaintiffs have failed to allege that any Defendant had a motive to prematurely recognize revenue,[71] have failed to allege that any Defendant had actual knowledge that revenue was being recognized prematurely, and have failed

---

we have achieved,' expressions of pride in [the defendant company's] staff, 'outstanding retail results,' and other similar comments all constitute vague, unspecific assertions of corporate optimism").
[69] Attached to the Appendix as Exhibit H is a table providing examples of non-actionable statements cited in the Complaint that constitute corporate puffery and/or forward-looking statements.
[70] *See* Compl., ¶¶235-293.
[71] *See* Section B, *supra*.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 27**

to allege that any Defendant was severely reckless is not knowing revenue was being recognized prematurely.[72]

It is well settled in the Fifth Circuit and elsewhere that allegations of GAAP violations, standing alone, fail to establish scienter:  "[T]he mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter." *Abrams,* at 432; *see also Central Laborers,* 497 F.3d at 552; *Magruder,* 2009 U.S. Dist. LEXIS 27561, at *30; *In re Dell, Inc. Sec. Litig.,* 591 F. Supp. 2d at 893.  The basis for this well-established principle is clear:  "Because GAAP is an 'elaborate hierarchy' of sources that accountants consult, rather than a 'canonical set of rules,' pleading an amalgam of unrelated GAAP violations, without more, does not give rise to a strong inference of scienter."  *In re Ceridian Corp. Sec. Litig.,* 542 F. 3d 240, 246 (8th Cir. 2008) (quoting *In re K-Tel Int'l, Inc. Sec. Litig.,* 300 F.3d 881, 890 (8th Cir. 2002)).  Rather, to establish a strong inference of scienter, the complaint must contain sufficient allegations showing that the defendant knew that he or she was publishing materially false financial information or was severely reckless in publishing such financial information. *Ind. Elec. Workers,* 537 F.3d at 534.

The Complaint fails to adequately allege that any of Defendants Pardo, Peden or Martin (1) knew that revenue was not being properly recorded; (2) knew that the disclosed revenue recognition policy was not being followed; or (3) knew that any backdating of documents was occurring that could impact revenue recognition.[73]  Nor do Plaintiffs adequately allege that each of the Defendant was severely reckless in not knowing the foregoing.  Indeed, based upon the Complaint's allegations, it appears that the backdating of documents occurred throughout the year, and that such backdating did not occur only at quarter or year end in a concerted effort to

---

[72] *See* Compl., ¶¶243-255.
[73] *See* Compl., ¶¶235-293.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 28**

alter revenue.  Further, the fact that restated revenues for fiscal years 2007-2010 and the first three quarters of 2011 showed that, for some periods, revenue was *understated*, as opposed to overstated, actually evidences a lack of intent to systematically overstate revenues.[74]  Absent allegations of knowledge, participation or motive, Plaintiffs' claims in this regard must be dismissed.

Strikingly similar claims made by the Securities and Exchange Commission were dismissed due to the same deficiencies.  In *SEC v. Cohen*, the SEC sued the CFO of a public company that issued an accounting restatement as a result of improper revenue recognition.[75] The pervasiveness of the revenue recognition problem was determined when 300 contracts from 2000 to 2003 were reviewed, and it was found that a majority of those contracts "showed improperly accelerated revenue."[76]  The SEC alleged that, as the CFO, defendant knew that the company was prematurely recording revenue and, further, that the CFO was motivated to manipulate the revenues in order to inflate the company's revenues and earnings, facilitate the company's secondary offering, and derive personal gain from annual bonuses and stock sales.[77] After a bench trial, the court found that the SEC had failed to prove scienter because (1) there was "no evidence that defendant knew the various managers assigned to properly report the revenue were not performing their jobs correctly," and (2) there was "no evidence that the managers were pressured by defendant to accelerate revenue."[78]   Further, because the restatement of revenues resulted in both over- and understatements, the court found that it could not "discern a pattern where . . . [the] revenue was strategically shifted."[79]  Finally, the court

---

[74]  *See* LPHI's Form 10-K for the fiscal year ending February 28, 2011, available at http://www.sec.gov/ Archives/edgar/data/49534/000114420411066513/ v241450_10k.htm.
[75] No. 4:05CV371-DJS, 2007 U.S. Dist. LEXIS 28934, at *3, 25-27 (E.D. Mo. April 19, 2007).
[76] *Id.* at *27.
[77] *Id.* at *48-53.
[78] *Id.* at *48-49.
[79] *Id.* at *51.

rejected the argument that the CFO's single sale of stock "significantly below the all-time high and at months away from the secondary offering" supported scienter.[80]

Similarly, in this case, Plaintiffs have not alleged that any of the Defendants (1) actually participated in the misallocation of revenue, (2) knew employees were improperly recognizing revenue, (3) knew employees were backdating documents, (4) pressured employees to recognize revenue improperly, or (5) were strategically motivated to understate or overstate revenues in any particular period.[81]   Although the *Cohen* case was a bench trial in which the SEC had an opportunity, but failed, to present evidence of its scienter allegations, the fact that Plaintiffs have not even asserted such allegations in this case – or, to the extent they have, have only done so improperly, in a conclusory fashion – further highlights the necessity for dismissal of Plaintiffs' claims in this case.

Plaintiffs attempt to allege "knowledge" of improper revenue recognition when they assert that Martin reviewed and approved quarter-end accrual journal entries, and asserts that Pardo and Peden "monitored daily, monthly, quarterly, and annual contract activity, including contract funding status . . . ."[82]   However, Plaintiffs fail to identify with any specificity to which reports Plaintiffs refer and how those reports revealed to each Defendant that revenue was being recognized improperly.  "An unsupported general claim about the existence of confidential corporate reports that reveal information contrary to reported accounts is insufficient to survive a motion to dismiss.  Such allegations must have corroborating details regarding the contents of allegedly contrary reports, their authors and recipients."  *Abrams*, 292 F.3d at 432.  *Goldstein v. MCI Worldcom,* 340 F.3d 238, 253 (5th Cir. 2003) (holding allegations "that the individual defendants, (the CEO and CFO) received daily, weekly, and monthly financial reports, that

---

[80]*Id.* at *52-53.
[81] *See* Compl., ¶¶235-293.
[82] Compl., ¶55.

apprised them of the true financial status" were insufficient and overly general to support an inference of scienter.).[83]   Further, Plaintiffs' claim that Pardo, Peden and Martin were aware of the policy owner's rescission rights under the of Seller Agreements, which exposed the impropriety of Life Partners' revenue recognition practices" is conclusory and fails to sufficiently state a claim for scienter.[84]   *See SEC v. Shanahan*, 646 F.3d at 544.

## 2. Plaintiffs Failed to Plead Scienter with respect to the Impairment Claims.

Plaintiffs' allegations regarding the calculation of impairment is premised on the same faulty analysis of Dr. Cassidy's LEs discussed *supra*, coupled with improper conclusory claims.[85]   For example, without any factual support, Plaintiffs allege that, "[d]espite their awareness that these policies may have been impaired when acquired, Defendants failed to properly evaluate potential impairment."[86]   This conclusory allegation fails to satisfy the pleading requirements for scienter.  Plaintiffs further improperly allege that "Pardo, Peden, and Martin understood that the Company's impairment calculations depended on the validity of Cassidy's LEs."[87]   However, Plaintiffs provide no factual basis to support the claim that (1) the policies at issue were all purchased using Dr. Cassidy's LEs, (2) Defendants Pardo, Peden and Martin knew, at the time that the policies were purchased, that the policies were "impaired," or (3) assuming Defendants knew the policies were impaired, that Defendants knew the extent of the impairment.

Coupling conclusory claims with absurdity, Plaintiffs allege that in the summer of 2010, Ernst & Young requested data from LPHI allegedly to support the LEs underlying the

---

[83]  Plaintiffs' allegations regarding auditor communications from 2004 (Compl., ¶¶239, 270-272) must be disregarded, as Plaintiffs makes no claims against Defendants for time periods prior to May 2006.
[84]  *See* Compl., ¶271.
[85]  *See* Compl., ¶261.
[86]  Compl., ¶256.
[87]  Compl., ¶262.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT THEREOF – Page 31**

"Company's investment in policies."[88]   In response, Plaintiffs allege that Defendants Peden and Martin provided Ernst & Young with a chart "on the most recent 300 maturities of viatical and life settlement policies sold by Life Partners."[89]   Plaintiffs then attempt to attach a nefarious motive to the chart of "most recent" maturities, when it alleges that Peden and Martin "failed to alert E&Y" that insureds underlying 1,200 of the outstanding policies had outlived Dr. Cassidy's LEs.   The absurdity of this claim is obvious – if, as readily admitted by Plaintiffs, Peden and Martin provided E&Y with the "most recent" maturities, how was E&Y misled?   Plaintiffs do not allege that E&Y requested information regarding all outstanding policies, that Defendants refused to provide that information, or that Defendants provided false information in response to such hypothetical request.   Absent such assertions, this allegation is provides no basis to establish scienter related to LPHI's impairment analysis.

Plaintiffs further allege that E&Y recommended – in May 2010 – that LPHI conduct a quarterly analysis of the accuracy of initial LEs to determine if adjustments needed to be made to the underwriting process.[90]   Of course, this allegation undermines Plaintiffs' claim that any of the Defendants knew that Dr. Cassidy's LEs were significantly underestimated and, further, undermines Plaintiffs' claim that Defendants knew LPHI's impairment analysis was incorrect.

### 3.     Plaintiffs' Claims Based upon alleged SOX Certifications are Inadequate.

For each and every quarterly and annual statement within the Class Period, Plaintiffs make the same generic allegation that "the SOX certifications were materially false and misleading because . . . LPHI's accounting systems of internal control were defective and a material weakness existed in these internal controls.   Such that 'there is a more than remote likelihood that a material misstatement to annual or interim financial statements could occur and

---

[88] Compl., ¶264.
[89] Compl., ¶264.
[90] Compl., ¶265.

not be prevented or detected by the Company's internal controls in a timely manner.'"[91] However, it is well-settled that a "Sarbanes-Oxley certification, standing alone, is not indicative of scienter." *Ind. Elec. Workers*, 537 F.3d at 545. "To hold otherwise… would mean that 'scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.'" *Id.* (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)). Rather, for an officer's SOX certification to be probative of scienter, there must be "facts establishing that the officer who signed the certification had a reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions." *Id.* (internal quotations omitted).

In this case, entirely absent from the Complaint are any facts that establish the existence of any red flags or "glaring accounting irregularities" that would support an inference that the Defendants knew or were severely reckless in not knowing that LPHI's internal controls suffered from the alleged material weaknesses at the time the Defendants made their respective SOX certifications.[92] Instead, Plaintiffs rely upon the letters from E&Y and Eide Bailly dated June 6, 2011 and June 14, 2011, respectively, neither of which contain any allegations that could remotely support a strong inference that each Defendant knew, or were severely reckless in not knowing, of the alleged material weaknesses at the time of their respective SOX certifications, all of which occurred prior to LPHI's receipt of such letters.[93] *In re Ceridian,* 542 F. 3d at 246 ("Allegations that accounting errors were discovered months and years later do not give rise to a strong inference that the [SOX] certifications were knowingly false when made."). Further, even

---

[91] *See* Compl., ¶¶93, 106, 111, 114, 117, 121, 131, 136, 145, 162, 173, 174, 179, 183, 189, 197, 204, 206.
[92] *See, generally,* Compl.
[93] *See* Compl.,¶¶226, 227, 229, 230.

assuming, *arguendo*, LPHI lacked adequate controls, "[t]he lack of adequate internal controls . . . does not lead to a strong inference of scienter." *In re Verifone Holdings, Inc. Sec's Litig.*, No. C-07-6140-MHP, 2011 U.S. Dist. LEXIS 24964, at *38 (N.D. Cal. Mar. 8, 2011).  Accordingly, Plaintiffs' allegations concerning the SOX certifications cannot support a strong inference of scienter and, thus, must be disregarded.

In summary, Plaintiffs have failed to satisfy the heightened pleading requirements for scienter under Rule 9(b) and the PSLRA, and consequently, Defendants respectfully request that their Motion to Dismiss be granted in its entirety.[94]

## G.      The Complaint Fails to State a Claim for Controlling Person Liability under Section 20(a).

Section 20(a) of the Exchange Act imposes controlling person liability on persons who directly or indirectly control "any person liable" under Section 10(b).  *See* 15 U.S.C. §78t.  Thus, the statute "plainly requires the plaintiff to prove not only that one person controlled another person, but also that the 'controlled person' is liable under the Act.  If no controlled person is liable, there can be no controlling person liability."  *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3rd Cir. 1992).  Put another way, "[c]ontrol person liability is . . . derivative – it is predicated on the existence of an independent violation of the securities laws."  *In re Dell Sec. Litig.,* 591 F. Supp. 2d at 912.  *See also Lovelace,* 78 F.3d at 1021 n.8.  Because, as detailed herein, Plaintiffs have failed to adequately plead any Section 10(b) violations by Defendants, Plaintiffs have, likewise, failed to plead violations of Section 20(a), and that claim must also be dismissed.[95]

---

[94] *See In re: Franklin Bank Corp. Sec. Litig.*, No. 4:08-CV-1810,  2011 U.S. Dist. LEXIS 28898, at *22 (S.D. Tex. Mar. 21, 2011) (While the court will view a complaint *in toto* when considering whether a strong inference of scienter has been pleaded, each allegation of fraud must individually meet the particularity requirements of the PSLRA.").

[95] *See* Compl., ¶¶323-324.

## III.

## CONCLUSION

For each of the multiple reasons set forth herein, Plaintiffs' Complaint lacks any basis in law or in fact and should be dismissed with prejudice.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray that their Motion to Dismiss be, in all things, granted, that Plaintiffs' Complaint be dismissed in its entirety, with prejudice, and for such other and further relief to which Defendants may show themselves justly entitled.

Respectfully submitted,

**BAKER & McKENZIE, LLP**

By: /s/ Elizabeth L. Yingling
　　Elizabeth L. Yingling (Lead Counsel)
　　State Bar No. 16935975
　　E-Mail: elizabeth.yingling@bakermckenzie.com
　　Laura J. O'Rourke
　　State Bar No. 24037219
　　E-Mail: laura.orourke@bakermckenzie.com
　　Will R. Daugherty
　　State Bar No. 24053170
　　E-Mail: will.daugherty@bakermckenzie.com
　　2300 Trammell Crow Center, 2001 Ross Avenue
　　Dallas, TX  75201
　　Tel.: (214) 978-3000
　　Fax: (214) 978-3099

　　Trey Martinez Fischer
　　State Bar No. 24007183
　　IBC Centre, 130 East Travis, Suite 425
　　San Antonio, Texas 78205
　　Tel.: (210) 224-6000
　　Fax: (210) 229 8222
　　www.tmflawfirm.com

　　**ATTORNEYS FOR DEFENDANTS LIFE PARTNERS HOLDINGS, INC., LIFE PARTNERS, INC., SCOTT PEDEN, AND DAVID MARTIN**

**LOCKE LORD LLP**

By:/s/ Jason S. Lewis
    Jason S. Lewis
    State Bar No. 24007551
    Email: jlewis@lockelord.com
    David W. Klaudt
    State Bar No. 00796073
    Email: dklaudt@lockelord.com
    2200 Ross Avenue, Suite 2200
    Dallas, Texas  75201
    Tel: (214) 740-8000
    Fax: (214) 756-8414

**ATTORNEYS FOR DEFENDANT BRIAN D. PARDO**

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that on March 26, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court.  All others were served a copy via U.S. mail.



/s/ Elizabeth L. Yingling

DALDMS/709308.4